June, 1809.

BENTON
v
DUTCHER.

---

## JOSIAH BENTON *against* JOHN A. DUTCHER.

*A.* gave a legacy to the wife of *B.* payable in three and six years from the testator's death; *C.* a creditor of *B.* attached this legacy, by process of foreign attachment, in the hands of *A.'s* executor, and demanded the same of him, on execution, before the first instalment became due, and then brought a *scire facias* against him to answer the debt out of his own estate: Held, that he was not liable.

MOTION for a new trial.

This was a *scire facias* against *Dutcher*, as garnishee in a process of foreign attachment.

The original action was against *Elisha Wells; Dutcher* was served with a copy in *April*, 1805; in *March*, 1806, *Benton* recovered judgment; and on the 8th of *May* following, a demand was regularly made upon *Dutcher* of the effects of *Wells* in his hands to satisfy the execution, but none were exposed, and the execution was returned *non est inventus.*

From *Dutcher's* disclosure it appeared, that *Ruluff Dutcher*, by his last will, gave *Wells's* wife a legacy of

*Qu.* Whether a legacy due to the wife, but not reduced to possession, can be attached, by process of foreign attachment, for a debt due from the husband?

700 dollars, payable in cattle and sheep at appraisement, by two equal instalments, the first at the end of three years, and the second at the end of six years, after the testator's death; that the testator died in *November*, 1803, having appointed the garnishee in this process his executor; and that in *January*, 1805, *Daniel Penfield* gave him notice of an assignment of the legacy by *Wells* and his wife.

June, 1809.

BENTON
v.
DUTCHER.

The counsel for the garnishee contended, that the legacy was not by law subject to attachment in his hands for the debts of *Wells*. But the court instructed the jury otherwise, and the plaintiff obtained a verdict. A motion for a new trial being made, the question was reserved for the consideration of the nine judges.

*Dwight*, in support of the motion.

1. This legacy was not subject to foreign attachment for the husband's debts, he not having reduced it to possession. It is a clear principle of law, that to give the husband title to his wife's personal estate, which came to her before, or during coverture, he must exercise some power over it; and that this is true of things in action as well as of chattels. 1 *Bac. Abr.* 480. *Co. Litt.* 351. *Harg. & But. Note*, 304. In *Garforth* v. *Bradley*, 2 *Ves.* 675. it was held, that wherever a *chose in action* comes to the wife, whether vesting before or after marriage, if the husband dies during the life of his wife, it will survive to her. To recover a legacy to the wife during coverture, she must join. *Clark* v. *Lord Angier*, *Chan. Cas.* 41. cited 4 *Vin. Abr.* 79. *pl.* 28. The same principle is recognised by Lord *Kenyon* as undoubted law, in *Milner* v. *Milnes*, 3 *Term Rep.* 631.

But a case from 2 *Roll. Rep.* 134. will probably be cited against us. It is abridged in *Comyns' Digest*, tit.

*Baron and Feme*, (E. 3.) thus: " So, if a legacy be given to a *feme covert* to be paid twelve months after his [the testator's] death, and the wife die within the twelve months, the interest goes to the husband; for it was vested in him, and he might release within the twelve months." But the authority does not justify the abstract which *Comyns* has given. *Montague*, Ch. J. instead of saying, " the interest goes to husband, for it was vested in him," says, " the husband had *an interest* in it before the time of payment accrued, *which interest* it is clear he might have released before the time of payment." This authority is understood by *Viner* in the same sense. 4 *Vin. Abr.* 44. *pl.* 17. That the husband has "*an interest*," which he might release, is correct; but that the property in the legacy *absolutely vests*, without any act of his to reduce it to possession, contradicts the plain principles of the common law. If, indeed, the case in *Rolle* went the length contended for by the plaintiff, this court would hesitate before they would receive the opinion of any single judge, which goes to overthrow so important and well established a doctrine. It would amount to this; that because the husband has *an interest* in the wife's personal property, not reduced to possession, it is, to all intents and purposes, his. This would completely destroy the common law principle, that to give him title, he must have possession during coverture.

2. No demand was made of this legacy of the executor, after it became payable. The first instalment was not due until *November*, 1806. The executor was not bound to pay it to any body until that time; and when that time arrived, he had, by the provisions of the will, the privilege of paying it in cattle, &c. The demand made by the sheriff on the execution was in *May*, 1806. At that time, the executor was under no obligation to pay; and no further demand was made. Of course, as the cattle, &c. were not demanded in *November*, 1806,

there has been no refusal, on his part, to pay the legacy according to the terms of the will; and, therefore, they cannot be rendered liable to pay the amount out of their own estate.

*Brace* and *Bradley*, contra.

Although we do consider, that the husband might maintain an action in his name without joining the wife; [see 2 *Com. Dig.* 82. *Dub.* edit.] yet we do not consider this case as depending upon that question. The true question in the case is, whether the husband's interest (for it must must be acknowledged that he has an interest which may be made absolute at his election) may not also be made absolute at the election of his creditor attaching it in the hands of the debtor? The objection is, that if this may be done, the contingent interest of the wife, suspended during the coverture, but absolute in case she survives the husband, will be defeated. But if this interest, as is admitted, may be defeated by an act of ownership exercised by the husband, why may it not also be defeated by the operation of law, applying this property to the discharge of the husband's debts? The *chattels real* of the wife, in case the husband dies first, leaving them undisposed of, survive to her, as well as her *choses in action;* but they are liable, at the common law, to process of execution in favour of the husband's creditors. 2 *Bla. Com.* 438. And if the wife's contingent right of survivorship will not avail her against the ordinary process of law, in favour of her husband's creditors, where the property is visible, it is difficult to discover a reason why this objection should be available, where the property is of a secret and invisible nature, and the extraordinary process of foreign attachment is used to call it forth. In that respect only is there a difference: the principle is the same in both cases.

BY THE COURT. The legacy to the wife of *Elisha Wells* was payable in cattle or sheep at appraisement, at two equal payments, the first of which fell due in *November*, 1806. The defendant, as executor of the last will of *Ruluff Dutcher*, the testator, was holden to pay the legacy when due. The plaintiff obtained judgment on his suit against *Elisha Wells*, and on the execution thereon the officer made return, that on the 8th day of *May*, 1806, he demanded of the executor, as trustee and debtor to said *Wells*, the property of said *Wells* in his hands, to satisfy the execution, and that he refused to show or deliver it. This demand was made before any part of said legacy was due from the executor. No other demand was ever made. The plaintiff declares, that the defendant, executor as aforesaid, has become liable to pay and satisfy the judgment against *Wells* out of his own estate, and demands judgment for the same against him.

No such demand was ever made on the defendant as obliged him to tender the cattle and sheep, mentioned in the legacy, to the officer on the execution, or would subject him, on failure of such tender, to the payment of the amount of said legacy, or the moiety thereof, to the plaintiff in money, from his own proper goods and effects. The facts will not warrant the rendering of such judgment against him in this case. For these reasons, we consider the charge to the jury incorrect, and advise a new trial of the case.

New trial granted.